ROBERTS, Appellant,

v.

HUTTON et al., Appellees.

Roberts, Appellee,

v.

Hutton, Appellant;  State Farm Mutual Insurance Company, Appellee.

[Cite as *Roberts v. Hutton*, 152 Ohio App.3d 412, 2003-Ohio-1650.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 01AP–1465 and 02AP–6.

Decided March 31, 2003.

414

Scott R. Roberts, pro se.

Mary Hutton, pro se; Lyman Law Offices and Chester T. Lyman Jr., for defendant Mary Hutton.

Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P., and Barry W. Littrell, for defendant State Farm Mutual Automobile Insurance Company.

PETREE, Presiding Judge.

{¶ 1} On or about October 29, 1996, defendant Mary Hutton was involved in an automobile accident when her car was struck from behind while traveling on Ohio Route 315. Hutton was taken to the emergency room at Ohio State University Hospitals, where she was treated and released that day. Shortly thereafter, Hutton retained the services of an attorney, plaintiff Scott R. Roberts, to represent her in connection with her personal injury and property damage claims. On November 5, 1996, Hutton and Roberts executed a "Retainer and Fee Agreement," which provided:

{¶ 2} "In consideration for the legal representation of ATTORNEYS contemplated by this contract, and as compensation therefore [sic, therefor], CLIENT agrees to pay and hereby assigns to ATTORNEYS 33 1/3 percent of all monies and things of value recovered on behalf of CLIENT. * * *"

{¶ 3} In due course, Roberts prepared settlement documents, which he submitted to the tortfeasor's insurance carrier, State Farm Mutual Automobile Insurance Company ("State Farm"). According to Hutton, she initially offered to settle her claim for $50,000, an offer which State Farm rejected. Thereafter, on October 13, 1998, Roberts filed suit on Hutton's behalf in the Franklin County Court of Common Pleas. However, prior to the date set for trial, the court scheduled Hutton's case for arbitration.

{¶ 4} On June 22, 1998, the parties met, and Roberts offered to settle Hutton's case for $30,000. State Farm rejected this offer and made a counteroffer of $9,500. Hutton refused this counteroffer and, according to Roberts, was unwilling to negotiate further, or to settle her case for any amount less than $30,000.

{¶ 5} According to Roberts, after the settlement conference, both he and Hutton mutually agreed that the two should part company and that Hutton

needed to find replacement counsel. However, Hutton suggests in her appellate briefs that Roberts pressured her to accept State Farm's settlement offer and when she refused, Roberts told her that if she did not accept the $9,500 offer and wished to take the case to trial, she would have to find another attorney. In either case, the two parted company, and shortly thereafter Hutton asked Roberts to send her file to attorney Charles W. Gayton.

{¶ 6} On June 28, 1999, Roberts sent a letter to Gayton and counsel for State Farm, advising each that he no longer represented Hutton and that he was placing a lien on Hutton's case to ensure payment of his fee and recovery of the expenses advanced on Hutton's behalf. Roberts did not, however, ask the trial court's permission to withdraw his representation, nor did he notify the trial court that he would no longer be representing Hutton in this matter. Roberts based the amount of his claim for fees upon the following provision contained in the parties' agreement:

{¶ 7} "If either CLIENT or ATTORNEYS terminate this agreement, ATTORNEYS shall be entitled to compensation for the fair market value of their services preceding the termination. If there is a pending settlement offer at the time this agreement is terminated, the parties hereby agree that the fair market value of such services shall be the agreed upon percentage of the last best offer of settlement.  * * *"

{¶ 8} Gayton terminated his relationship with Hutton in March 2000. However, before doing so, on March 20, 2000, he voluntarily dismissed Hutton's complaint without prejudice. Thereafter, Hutton retained the services of attorney Jack Vogel who also terminated his representation of Hutton.

{¶ 9} On March 20, 2001, Hutton refiled her complaint against State Farm without the benefit of legal counsel. She then successfully negotiated a settlement of her claims in March 2001 for approximately $11,000. At that time, Roberts demanded that he be reimbursed for Hutton's advanced expenses, in addition to what Roberts contended was the full value of the services rendered to Hutton. According to Roberts, this amount was $3,166.67, or, according to the parties' "Retainer and Fee Agreement," 33⅓ percent of $9,500, the last offer presented by State Farm at the settlement conference. When Hutton refused to pay this amount, Roberts filed a collection action against her in the Franklin County Municipal Court on May 1, 2001. As a result of the filing of Roberts's collection suit, State Farm issued a check in the amount of $3,166.67, jointly payable to both Hutton and Roberts. In response to Roberts's complaint, Hutton filed an answer and counterclaim for breach of contract and legal malpractice.

{¶ 10} On November 16, 2001, the trial court granted Roberts's leave to file a motion seeking summary judgment on his complaint against Hutton, as well as upon Hutton's counterclaim. The trial court granted this motion on December 4,

2001, awarding Roberts the amount advanced to Hutton for costs. However, it did not award Roberts any amount for attorney fees. The trial court also awarded Roberts judgment on Hutton's counterclaim for breach of contract and malpractice. A review of the record reveals that the court granted judgment in two, one-page judgment entries, which lack any meaningful analysis, findings of fact, or conclusions of law.

{¶ 11} Both parties appeal the trial court's rulings. For purposes of briefing and argument, the two appeals were consolidated. In case No. 01AP–1465, Roberts sets forth the following single assignment of error:

{¶ 12} "Although the trial court correctly granted plaintiff/appellant's Motion for Summary Judgment, the trial court erred in the [sic] calculating the amount of such judgment by failing to include in that judgment the reasonable value of plaintiff/appellant's legal services as agreed upon in the parties' contingent fee contract."

{¶ 13} Conversely, in case No. 02AP–6, Hutton presents the following four assignments of error for our review:

{¶ 14} "[1.] Trial court erred in granting summary judgment to Mr. Roberts without ruling first on the outstanding motion to compel Mr. Roberts to comply with discovery rules.

{¶ 15} "[2.] Trial court erred by granting summary judgment to Mr. Roberts on his complaint (although Mrs. Hutton agrees with the court's decision to only award Mr. Roberts $220) when disputed issues existed as to whether Mr. Roberts breached his contract with Mrs. Hutton before Mr. Roberts filed this complaint for fees.

{¶ 16} "[3.] The trial court erred in granting summary judgment to Mr. Roberts on Mrs. Hutton's counterclaim of breach of contract and malpractice based on the statute of limitations when disputed issues existed as to when Mr. Hutton discovered the breach and malpractice.

{¶ 17} "[4.] The trial court erred by granting State Farm's motion to dismiss without first requiring State Farm to release $3,166.67 in funds that it is holding pending the outcome of this case."

{¶ 18} The burden of affirmatively demonstrating error on appeal rests with the party asserting error. App.R. 9 and 16(A)(7); and *State ex rel. Fulton v. Halliday* (1944), 142 Ohio St. 548, 27 O.O. 487, 53 N.E.2d 521. Pursuant to App.R. 16(A)(7), an appellant must present his or her contentions with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record upon which he or she relies. It is not the duty of this court to search

the record for evidence to support an appellant's argument as to alleged error. *Slyder v. Slyder* (Dec. 29, 1993), Summit App. No. 16224, 1993 WL 548760; *Sykes Constr. Co. v. Martell* (Jan. 8, 1992), Summit App. Nos. 15034 and 15038, 1992 WL 2919. It is also not appropriate for this court to construct the legal arguments in support of an appellant's appeal. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), Summit App. No. 18349, 1998 WL 224934.

{¶ 19} In this case, Roberts seeks a determination that the trial court incompletely entered summary judgment in his favor. A motion for summary judgment allows a court to terminate litigation where a resolution of factual or legal dispute is unnecessary. In order to make a determination that the trial court erred in making its determination, we review the facts and law applicable to this case independently, without deference to the ruling of the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 671 N.E.2d 241. Civ.R. 56(C) provides:

{¶ 20} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"

{¶ 21} The Ohio Supreme Court has held that in order for a motion for summary judgment to be granted, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. In order to carry this burden:

{¶ 22} "* * * [T]he movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. * * * These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. * * *" Id. at 292–293, 662 N.E.2d 264.

{¶ 23} Although the court must view the facts in a light most favorable to the nonmoving party, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, when a properly supported motion for summary judgment is made, the nonmoving party is not permitted to rest upon the allegations or denials contained in his or her pleadings but must come forward with specific facts showing the existence of a genuine issue for trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, following *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; and *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904.

{¶ 24} In his sole assignment of error, Roberts maintains that the trial court erred when it "fail[ed] to include in that judgment the reasonable value of plaintiff/appellant's legal services as agreed upon in the parties' contingent fee contract."

{¶ 25} In *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, Purdon asked the Ohio Supreme Court to depart from the previously established rule in which the Supreme Court held that where it is proven that an express contingency fee contract between a lawyer and a client is breached, the measure of damages in such case is not limited to the reasonable value of the services rendered by the lawyers employed prior to the cancellation of the contract, but, rather, damages should be for the full contract price. In his appellate briefs in this case, Roberts asks this court to overturn the decision of the trial court and award him the full amount of the contract price, in spite of the fact that he was terminated, or refused to represent Hutton, long before she settled her case with State Farm.

{¶ 26} In *Fox,* the Supreme Court explained:

{¶ 27} "Under present Ohio law, a client may dismiss an attorney at any time, but the existence or nonexistence of just cause is relevant with regard to the attorney's right to compensation or damages. See *Bolton v. Marshall* (1950), 153 Ohio St. 250, 41 O.O. 270, 91 N.E.2d 508, paragraph one of the syllabus. Where an express contract exists between the attorney and client, breach of the contract without just cause requires full payment of the contract price, even if the attorney has not yet rendered services. *Scheinesohn v. Lemonek* [ (1911), 84 Ohio St. 424, 95 N.E. 913]. This rule is based on the premise that *quantum meruit* should not be used as the measure for damages since the client has not been benefited by some service, and yet, the value of the attorney's anticipated services has been fixed by agreement of the parties. The client not only bargains for the performance of the lawyer's services, but also for the fee to be paid for the services. Failure to perform actual services does not constitute a failure of the consideration underlying the promise to represent which is the basis of the promise to pay. See *Dombey, Tyler, Richards & Grieser v. Detroit T. & I. Ry. Co.* (C.A.6, 1965), 6 Ohio Misc. 185, 351 F.2d 121, 127. Furthermore, it has been assumed that placing value on attorney services is difficult since such services are not easily apportionable to the time or the labor performed or to be performed in the future. See *Kikuchi v. Ritchie* (C.A.9, 1913), 202 F. 857. This reasoning, however, must be abandoned in view of the contemporary and regulated status of today's attorney-client relationship relative to fees. For instance, the Code of Professional Responsibility, DR 2–106(A) through (C), provides guidelines for determining legal fees. These guidelines serve in large degree to protect the

public from exorbitant fees as well as giving attorneys defined parameters in charging for legal services.

{¶ 28} "The overriding consideration in the attorney-client relationship is trust and confidence between the client and his or her attorney. The right to discharge one's attorney would be of little value if the client were liable for the full contract price. To force such an agreement into the conventional status of commercial contracts ignores the unique, fiduciary relationship created by an attorney's representation of a client. There is nothing more critical to the professional relationship between attorney and client than the trust and confidence of the person being represented. Under the rule of *quantum meruit,* the client is protected since the discharge of an attorney is not always caused by a client's dissatisfaction with the quality of the service rendered but, rather, may result from the client's lack of faith and trust or confidence in the attorney. The client need not show cause or present evidence sufficient to constitute legal malpractice or negligence before discharge can be effectuated.

{¶ 29} "Neither does the *quantum meruit* rule create a threat that the discharged attorney will not be compensated for services rendered before discharge occurs. The fact that the contract is contingent does not vest the attorney with an interest in the case or affect the right to discharge. An attorney who substantially performs under the contract may be entitled to the full price of the contract in the event of discharge "on the courthouse steps," or just prior to settlement. See *Kaushiva v. Hutter* (D.C.App.1983), 454 A.2d 1373; *MacInnis v. Pope* (1955), 134 Cal.App.2d 528, 285 P.2d 688. Similarly, it would be inequitable to force a client who has received no service from the discharged attorney to pay the full price of the contract. Any benefit received by the client through subsequently successful litigation or settlement may have been the result of *in propria persona* representation or representation by new counsel.

{¶ 30} "* * *

{¶ 31} "We hold that where an attorney is discharged by a client with or without just cause, and whether the contract between the attorney and client is express or implied, the attorney is entitled to recover the reasonable value of services rendered prior to the discharge on the basis of *quantum meruit.* * * *

{¶ 32} "The new rule strikes the proper balance by providing clients greater freedom in substituting counsel, and in promoting confidence in the legal profession while protecting the attorney's right to be compensated for services rendered. * * *" Id. at 71–72, 541 N.E.2d 448.

{¶ 33} In *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 629 N.E.2d 431, another significant case dealing with this issue, the Ohio Supreme Court wrote:

{¶ 34} "*Fox* overruled several precedents, *Scheinesohn, supra,* and [*Howell*], *Roberts* [& *Duncan v. Montgomery,* 115 Ohio St. 502, 154 N.E. 740], *supra,* which had held that when a contingent-fee contract is breached by a client without just cause, the measure of damages is the full contract price, not the reasonable value of services rendered by the attorney prior to being discharged by the client. This court in *Fox,* by limiting a discharged attorney to a *quantum meruit* recovery, abandoned the so-called 'traditional rule,' now followed in a small minority of jurisdictions, in favor of a new emerging majority rule.  * * *

{¶ 35}  "* * *

{¶ 36}  "One of the central tenets of the *Fox* approach is that a client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge.  * * * Once discharged, the attorney must withdraw from the case, and can no longer recover on the contingent-fee-representation agreement.  The discharged attorney may then pursue a recovery on the basis of *quantum meruit* for the reasonable value of services rendered up to the time of discharge."  Id. at 573–574, 629 N.E.2d 431.

{¶ 37}  Both parties agree that shortly after the settlement conference, Roberts was no longer Hutton's attorney.  Accordingly, there is no question or dispute that Roberts was either discharged or withdrew, and that the application of the rule of *Fox* limits Roberts's recovery under the theory of *quantum meruit.* Stated alternatively, as in *Fox,* the *maximum* reach of Roberts's right to fees is the reasonable value of the legal services *actually rendered prior to the date of discharge.*  Accordingly, the clause in Roberts's fee and retainer agreement which provides "conclusively" that he shall receive 33⅓ percent of the last best offer in the event of discharge regardless of the true value of the work he performed for his client is invalid.

{¶ 38}  In this case, the trial court should have considered the totality of the circumstances involved in this representation.  The number of hours worked by Roberts before the termination of his representation is only one factor to be considered.  Additional relevant considerations include the amount sought, the skill required and/or expertise demanded, and the results obtained, if any.  See *Reid, Johnson, Downes, Andrachik & Webster,* supra.  Other factors to be considered will vary, depending on the facts of each case.  Id. at 576, 629 N.E.2d 431.  DR 2–106(B) also gives guidance in determining the reasonableness of attorney fees.  That rule provides the following:

{¶ 39}  "* * * [The] [f]actors to be considered as guides in determining the reasonableness of a fee include the following:

{¶ 40} "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

{¶ 41} "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

{¶ 42} "(3) The fee customarily charged in the locality for similar legal services.

{¶ 43} "(4) The amount involved and the results obtained.

{¶ 44} "(5) The time limitations imposed by the client or by the circumstances.

{¶ 45} "(6) The nature and length of the professional relationship with the client.

{¶ 46} "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

{¶ 47} "(8) Whether the fee is fixed or contingent."

{¶ 48} Because the factors to be considered are based on the specific facts of each case, those facts should in the first instance be determined by the trial court within the proper exercise of its discretion. Furthermore, the trial court's findings of fact, legal analysis, and conclusions of law should be made part of the record of each case. Because the trial court made no recorded findings, did not set forth its analysis, and also did not set forth its conclusions of law in this case, there is no record on appeal from which we may determine if the court committed error. Therefore, we sustain Roberts's assignment of error and remand this issue to the trial court so that it may determine Roberts's entitlement to fees, if any, and for further proceedings consistent with this opinion and the applicable law.

{¶ 49} In her first assignment of error, Hutton declares the trial court erred when it failed to rule upon her motion to compel discovery from Roberts. However, we find no merit to this claim, as the trial court specifically ruled upon Hutton's motion in its December 4, 2001 judgment entry. Hutton's first assignment of error is therefore overruled.

{¶ 50} In her second assignment of error, Hutton argues that the trial court erred when it granted Roberts summary judgment on his claim for fees when disputed issues allegedly exist as to whether Roberts committed legal malpractice. We find this contention a little puzzling, since the trial court clearly did not award Roberts attorney fees in this case. Moreover, if it had awarded attorney fees, while there might be a setoff provided Hutton were to prevail on her counterclaim for malpractice, the question of whether Roberts is entitled to be compensated for the reasonable value of the services he provided is legally and

conceptually separate from the question of whether he committed malpractice. For the reasons set forth in this opinion, we have determined that Roberts's claim and entitlement, if any, to attorney fees remains to be determined by the trial court. As a result, this assignment is not yet ripe for determination by this court and is moot at this time.

{¶ 51} In her third assignment of error, Hutton accuses the trial court of incorrectly granting summary judgment on her counterclaim for breach of contract and legal malpractice based on the statute of limitations, when disputed issues exist as to when Hutton discovered the alleged breach and malpractice.

{¶ 52} Although Hutton presents a claim for breach of contract and a claim for legal malpractice, in this case these claims are one in the same. The one-year statute of limitations applicable to claims of legal malpractice is determined from the "gist of the complaint," not from the form of the pleading. *Hibbett v. Cincinnati* (1982), 4 Ohio App.3d 128, 131, 4 OBR 220, 446 N.E.2d 832. In *Muir v. Hadler Real Estate Mgt. Co.* (1982), 4 Ohio App.3d 89, 90, 4 OBR 170, 446 N.E.2d 820, the court has explained that "[m]alpractice by any other name still constitutes malpractice."

{¶ 53} Malpractice consists of " 'the professional misconduct of members of the medical profession and attorneys' " and may consist of either negligence or breach of contract. Id., quoting *Richardson v. Doe* (1964), 176 Ohio St. 370, 372, 27 O.O.2d 345, 199 N.E.2d 878. "It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice." Id.

{¶ 54} When challenged with a properly supported motion for summary judgment, a plaintiff's failure to demonstrate the existence of a genuine issue of material fact as to any of the elements of a legal malpractice claim entitles the defendant to summary judgment on the claim. To establish a cause of action for legal malpractice, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation such that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus, following *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058.

{¶ 55} Furthermore, a plaintiff must set forth expert testimony to establish that an attorney breached the duty of care owed to the plaintiff. The only exception to this requirement is when the alleged breach of care is so obvious that it can be determined from the ordinary knowledge and experience of laymen. *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795; *Bloom v. Dieckmann* (1983), 11 Ohio App.3d 202, 203, 11 OBR 298, 464 N.E.2d

187. Finally, an affidavit from the defendant or acting attorney can suffice as a legally sufficient basis upon which to grant a motion for summary judgment absent an opposing affidavit of a qualified expert witness for the plaintiff. *See Hoffman v. Davidson* (1987), 31 Ohio St.3d 60, 62, 31 OBR 165, 508 N.E.2d 958.

{¶ 56} An action which presents a claim for legal malpractice must be commenced within one year of the accrual of the cause of action. R.C. 2305.11(A). An action for legal malpractice accrues, and the statute of limitations begins to run, "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus. A "cognizable event" is an event sufficient to alert a reasonable person that his attorney has committed an improper act in the course of legal representation. *Spencer v. McGill* (1993), 87 Ohio App.3d 267, 278, 622 N.E.2d 7.

{¶ 57} In her counterclaim, Hutton maintains that Roberts's decision to withdraw his representation, coupled with his claim that he is entitled to be paid for the work he performed, constitute legal malpractice. We disagree.

{¶ 58} First, Hutton admittedly and voluntarily signed a retainer and fee contract which specifically covers one of the situations in which Roberts would be entitled to withdraw. That agreement provides:

{¶ 59} "If ATTORNEYS negotiate and recommend a reasonable settlement that ATTORNEYS believe should be accepted, and CLIENT does not agree to the proposed settlement, ATTORNEYS may require CLIENT to pay immediately the costs to that date and to advance all future costs and expenses. If CLIENT refuses to accept a reasonable settlement offer and refuses to bring the costs current and/or to advance the future costs and expenses, it is hereby agreed that CLIENT shall permit ATTORNEYS to withdraw from the case."

{¶ 60} The agreement also provided:

{¶ 61} "[I]f ATTORNEYS at any time determine that the prosecution of CLIENT'S claim is not feasible or is contrary to justice or the standards of good faith, ATTORNEYS are then entitled to withdraw from the representation of CLIENT, with reasonable notice to CLIENT."

{¶ 62} Our review of the record reveals that Hutton has come forward with absolutely no authority, statutory or otherwise, which supports her proposition that the contractual clauses, coupled with Roberts's withdrawal and claim for payment, amount to legal malpractice. As the Ohio Supreme Court held in *Fox,*

supra, an attorney may withdraw his or her representation with or without cause, just as a client may fire an attorney with or without cause. Further review reveals that after Roberts withdrew, Hutton was able to retain the services of attorney Charles Gayton, who filed a notice of substitution of counsel on August 19, 1999. After Gayton withdrew, Hutton was able to retain a third attorney, Jack Vogel. Thus, there is no indication that Roberts abandoned Hutton on the courthouse steps immediately prior to trial or in some way prevented her from retaining substitute counsel. More important, however, our review of Roberts's motion for summary judgment on Hutton's counterclaim is properly supported with admissible evidence, including his own affidavit. Accordingly, Hutton's third assignment of error is overruled.

{¶ 63} In her fourth assignment of error, Hutton contends that the trial court should have ordered State Farm to withdraw a check in the amount of $3,166.67, originally issued jointly payable to Hutton and Roberts, and reissue that check payable in her name only. While State Farm was a party to this appeal when it was filed, it is no longer a party to this action having been dismissed by mutual agreement of the parties on June 12, 2002. Thus, this court does not have personal jurisdiction over State Farm, which would enable this court to order the action sought by Hutton. This does not mean, however, that State Farm is entitled to keep these funds. Rather, it must obey the pending order of the trial court, which will determine who is entitled to these funds and who will instruct State Farm accordingly. Therefore, Hutton's fourth assignment of error is overruled.

{¶ 64} For the foregoing reasons, plaintiff's assignment of error is sustained, defendant's first, third, and fourth assignments of error are overruled, and defendant's second assignment of error is moot. The judgment of the Franklin County Municipal Court is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed
and cause remanded.

TYACK and BROWN, JJ., concur.