[Cite as *Hutchins v. McCamic*, 2023-Ohio-4174.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

WANDA HUTCHINS,

Plaintiff-Appellant,

v.

JEFFREY McCAMIC ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MO 0023**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2021-150

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Kyle R. Wright* and *Atty. Molly B. Morris*, Kademenos, Wisehart, Hines, Dolyk & Wright, Co., LPA, for Plaintiff-Appellant and

*Atty. Anthony W. Jesko*, Dickie, McCamey & Chilcote, PC, for Defendants-Appellees.

Dated: November 14, 2023

**HANNI, J.**

{¶1} Plaintiff-Appellant Wanda Hutchins appeals from a Monroe County Common Pleas Court judgment granting summary judgment in favor of Defendants-Appellees, Jeffrey McCamic and McCamic, Sacco & McCoid, PLLC, on Appellant's claim for legal malpractice.

{¶2} In 2011, Hutchins inherited the residuary estate of Myrtle Baker. This residuary estate included any mineral rights in Monroe County that Baker owned at the time of her death. Hutchins, who resides in North Carolina, asked her attorney, Louis Trosch, to contact an Ohio attorney on her behalf to discuss the mineral rights she believed she inherited.

{¶3} In 2013, Hutchins retained Attorney McCamic and his firm to negotiate an oil and gas lease for the mineral interest she believed she owned in Monroe County. McCamic then undertook a title search and filed Trosch's affidavit of identity and heirship (Trosch Affidavit) with the Monroe County Recorder on July 26, 2013. The Trosch Affidavit described how Hutchins became an heir of the original severed mineral interest. Trosch stated that he was well acquainted with the life and family history of Bertha Edna Baker and that she owned the oil and gas in the subject property. The affidavit stated various intestate and testate transfers of the oil and gas mineral interests, which resulted in Hutchins acquiring the interest from Myrtle Baker. When the Trosch Affidavit was filed, however, the Monroe County Recorder did not correctly index it. Consequently, the current surface owners could not find it in a search of county records.

{¶4} During this time, while McCamic was attempting to negotiate an oil and gas lease for Hutchins, the law within the Seventh Appellate District, including Monroe County, recognized that under the 1989 Dormant Mineral Act (1989 DMA) severed mineral interests were deemed abandoned and vested with the surface owner if: (1) the severance occurred 20 years prior to the enactment of the 1989 DMA, with a three-year grace period; and (2) no savings event occurred during the lookback period. Under this law, McCamic advised Hutchins that her mineral interest had been reunited with the surface estate and she no longer owned the mineral interest.

Case No. 22 MO 0023

**{¶5}** On September 17, 2013, the surface owners of a portion of the property at issue (the Dierkes) recorded an affidavit with the Monroe County Recorder stating they were the record owners of 13.798 acres of the property. They filed an affidavit of abandonment on December 18, 2013, along with another surface owner of the property. And they published their affidavit in the newspaper. These actions complied with the 2006 version of the Dormant Mineral Act (2006 DMA).

**{¶6}** On September 15, 2016, the Ohio Supreme Court held that the 1989 DMA was not self-executing and that any claim to a severed mineral interest made after June 30, 2006, when the 2006 DMA took effect, was controlled by the 2006 DMA. *Corban v. Chesapeake Expl., L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089. Thus, the 2006 DMA, not the 1989 DMA, controlled Hutchins' claim.

**{¶7}** Under the 2006 DMA:

> R.C. 5301.56(E) directs the surface holder to give advance notice to the mineral rights holder, allowing it an opportunity to preserve its mineral rights from being deemed abandoned and merged with the surface estate. R.C. 5301.56(E), (F), and (G). If neither a claim to preserve the interest nor an affidavit proving that a saving event occurred within the preceding 20 years is timely recorded, then the surface holder may record a notice that the mineral interest has been abandoned, and "the mineral interest shall vest in the owner of the surface of the lands formerly subject to the interest, and the record of the mineral interest shall cease to be notice to the public of the existence of the mineral interest or of any rights under it." R.C. 5301.56(H).

*Id.* at ¶ 30.

**{¶8}** After the Ohio Supreme Court's holding in *Corban*, McCamic filed a Notice of Preservation in the county recorder's office on behalf of Hutchins. He then filed a complaint against the surface owners to quiet title, for a declaratory judgment, and for slander of title. The surface owners filed a counterclaim seeking to quiet title and for a declaratory judgment stating that they owned the minerals underlying the subject property. The trial court granted the surface owners' summary judgment motion. It found that the Trosch Affidavit was not in the chain of title and could not be discovered through

a reasonable search. Therefore, it found service by publication was permitted by the surface owners when they filed a joint affidavit of abandonment.

**{¶9}** On appeal, this court affirmed the trial court's judgment. *Hutchins v. Baker*, 7th Dist. Monroe No. 19 MO 0005, 2020-Ohio-1108. In affirming, we determined that while it appeared the Trosch Affidavit was an attempt to memorialize Hutchins' mineral interest, it did not meet the statutory requirements under the 2006 DMA to be a valid claim to preserve. *Id.* at ¶ 30. Consequently, title to the mineral interest remained with the surface owners.

**{¶10}** On April 14, 2021, Hutchins filed a legal malpractice claim against McCamic and his firm, seeking to recover the value of her lost mineral interest. Hutchins stated in her complaint that the parties had agreed to several extensions of the statute of limitations, which McCamic admitted in his answer.

**{¶11}** The parties filed competing motions for summary judgment. The trial court granted summary judgment in favor of McCamic and his firm and against Hutchins. In so ruling, the trial court stated that during McCamic's representation of Hutchins, the law in the Seventh Appellate District, where the subject property is located, was that the 1989 DMA applied to present-day claims and automatically reunited an oil and gas estate with the surface estate after 20 years, plus a three-year grace period, barring any savings events. Thus, the court reasoned that Hutchins' mineral interest automatically reunited with the surface estate as of March 22, 1992, in accordance with the 1989 DMA. It noted that Hutchins could not point to any savings events that would have preserved the interest. The trial court found McCamic did not commit legal malpractice because once the mineral estate automatically reunited with the surface estate, there was nothing left to preserve and McCamic communicated this to Hutchins.

**{¶12}** Hutchins filed a timely notice of appeal on December 29, 2022. She now raises a single assignment of error for our review.

**{¶13}** Hutchins' sole assignment of error states:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF JEFFREY McCAMIC AND McCAMIC, SACCO, & McCOID, PLLC BECAUSE IT IMPROPERLY CONCLUDED THAT WANDA HUTCHINS HAD NO MINERAL INTEREST TO PRESERVE WHEN SHE

HIRED JEFFREY McCAMIC, AND THEREFORE, HE COULD NOT BREACH ANY LEGAL DUTY OWED TO HER.

{¶14} Hutchins argues the trial court erred in granting summary judgment in favor of McCamic. She asserts the court should not have concluded that she had no mineral interest to preserve when she hired McCamic. Hutchins points out that the trial court did not cite to any cases from 2013 to support its conclusion that the controlling law in Ohio at that time was that the 1989 DMA was self-executing. She asserts the trial court relied on case law from 2014, which was a year after she hired McCamic to preserve her mineral interests and negotiate oil and gas leases on her behalf. Hutchins asserts that in 2013, there was no binding precedent on the issue of whether the 1989 DMA was self-executing. Therefore, she argues, the 2006 DMA controlled in 2013.

{¶15} And because the 2006 DMA controlled in 2013, Hutchins argues, McCamic failed to comply with its requirements, resulting in a loss of her mineral interest. She further asserts the parties were all operating under the assumption that the 2006 DMA applied. She points to an email from McCamic dated May 22, 2014, stating this. (Defendant's Motion for S.J., Ex. E).

{¶16} In response, McCamic argues the trial court correctly granted summary judgment. He points out that in 2013, the state of the law involving the 1989 DMA and the 2006 DMA was evolving and nothing was settled until 2016 when the Ohio Supreme Court released *Corban*, 149 Ohio St.3d 212. McCamic contends that at the time of the alleged malpractice, the Supreme Court had not yet decided *Corban*. Therefore, he reasons, the 2006 DMA had no application to mineral rights that had already automatically vested in the surface owner by 1992. He asserts this meant that any interest Hutchins may have owned had already automatically terminated and re-united with the surface estate and, therefore, Hutchins had no interest to preserve.

{¶17} McCamic goes on to argue that in determining whether an attorney has breached his duty to his client, liability will not attach for lack of knowledge as to the true state of the law when a doubtful or debatable point is involved. He asserts the 1989 DMA versus the 2006 DMA issue created significant uncertainty as to the state of the law.

{¶18} An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶19} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit, 2015-Ohio-4167, 44 N.E.3d 1011, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶20} If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

{¶21} In order to establish a legal malpractice claim, the plaintiff must show: (1) the attorney owed a duty or obligation to the plaintiff; (2) there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law; and (3) there is a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall*, 77 Ohio St.3d 421, 421-422, 674 N.E.2d 1164 (1997).

{¶22} In this case, the parties filed competing motions for summary judgment. But the trial court did not address the elements of a legal malpractice claim or whether questions of fact existed as to those elements. Instead, the court went through an analysis of the state of the oil and gas law and the 1989 DMA and 2006 DMA at the relevant time of this case. It concluded that Hutchins' interest reunited with the surface under the 1989 DMA and, therefore, McCamic could not have committed malpractice as Hutchins had no interest to protect.

Case No. 22 MO 0023

**{¶23}** The trial court, however, did not take the correct approach.

**{¶24}** The Fourth District has set out the analysis to follow when considering a legal malpractice claim on summary judgment:

> To survive a properly supported summary judgment motion in a legal malpractice action, the plaintiff must demonstrate that genuine issues of material fact remain regarding each of the following elements: "(1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages." *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 8, citing *Vahila*, supra; *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 105, 538 N.E.2d 1058. The failure to establish any one of the foregoing elements is fatal to a legal malpractice claim. *See Shoemaker* at ¶ 8.

> "The duty of an attorney to his client is to ' * * * exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent in discharging the duties he has assumed.'" *Palmer v. Westmeyer* (1988), 48 Ohio App.3d 296, 298, 549 N.E.2d 1202, quoting 67 Ohio Jurisprudence 3d (1986) 16, Malpractice, Section 9. Expert testimony ordinarily is required to establish the applicable standard of care and whether an attorney breached the standard of care. *See Yates v. Brown*, 185 Ohio App.3d 742, 2010-Ohio-35, 925 N.E.2d 669, ¶ 18. Expert testimony ordinarily is not required, however, when "the breach [or lack thereof] is so obvious that it can be determined by the court or is within the ordinary knowledge and experience of laymen." *Id*., quoting *Haas v. Bradley*, Lorain App. No. 04CA8541, 2005-Ohio-4256, at ¶ 18, citing *Bloom v. Dieckmann* (1983), 11 Ohio App.3d 202, 203, 464 N.E.2d 187; see, also, *McInnis v. Hyatt Legal Clinics, Inc.* (1984), 10 Ohio St.3d 112, 461 N.E.2d 1295.

An attorney-defendant in a legal malpractice action need not obtain the expert opinion of an independent attorney. Instead, "an affidavit from the defendant or acting attorney can suffice as a legally sufficient basis upon which to grant a motion for summary judgment absent an opposing affidavit of a qualified expert witness for the plaintiff." *Roberts v. Hutton*, 152 Ohio App.3d 412, 787 N.E.2d 1267, 2003-Ohio-1650, ¶ 55, citing *Hoffman v. Davidson* (1987), 31 Ohio St.3d 60, 62, 508 N.E.2d 958; see, also, *Vahdati'bana v. Scott R. Roberts & Assoc. Co., L.P.A.*, Franklin App. No. 07AP-581, 2008-Ohio-1219, ¶ 31, citing *Roselle v. Nims*, Franklin App. No. 02AP423, 2003-Ohio-630 (stating that a licensed attorney in a legal malpractice action may testify as to whether the applicable standard of care has been met and that independent expert testimony on is not required).

Ohio courts have uniformly held that summary judgment is warranted when an attorney-defendant presents his own or an independent expert's affidavit and the plaintiff fails to respond with an opposing expert affidavit. *See Fincher v. Phillips*, Lucas App. No. L-10-1330, 2011-Ohio-968, ¶ 13 (stating that in legal malpractice action, "[u]nopposed expert testimony is sufficient to demonstrate that there is no genuine issue of material fact"); *Yates*, supra, (holding that trial court properly granted defendant summary judgment when plaintiffs failed to respond with expert testimony); *Hillman v. Edwards*, Franklin App. No. 08AP-1063, 2009-Ohio-5087, ¶ 25 (holding that summary judgment appropriate when plaintiff failed to present expert testimony to rebut defendant-attorney's affidavit and instead simply claimed that defendant's representation was deficient); *Hooks v. Ciccolini*, Summit App. No. 20745, 2002-Ohio-2322 (stating that an affidavit from a licensed attorney is a legally sufficient basis upon which to grant summary judgment in legal malpractice action absent an opposing affidavit of a qualified expert witness asserting malpractice). These cases essentially reinforce the summary judgment rule-once the moving party presents proper Civ.R. 56 evidence that shows the absence of a material fact, the opposing party must

respond with proper Civ.R. 56 evidence that shows the existence of a material fact.

*Dillon v. Siniff*, 4th Dist. Ross No. 11CA3268, 2012-Ohio-910, ¶ 19-22.

**{¶25}** In this case, McCamic did not file his own affidavit in support of his summary judgment motion or in his response in opposition to Hutchins' motion. Nor did he file an affidavit from another attorney or an expert to establish the applicable standard of care or to opine whether he breached the standard of care.

**{¶26}** McCamic did cite to his own deposition testimony in an attempt to establish there was no attorney-client relationship as to preserving Hutchins' mineral interest. In his deposition, McCamic stated that Hutchins only retained him to negotiate an oil and gas lease; she did not retain him to preserve her mineral interest. (McCamic Depo. 20).

**{¶27}** Hutchins, however, stated in her deposition that she hired McCamic to both preserve her mineral rights and to negotiate an oil and gas lease. (Hutchins Depo. 11).

**{¶28}** Additionally, in a May 22, 2014 email from McCamic to Trosch, McCamic informed Trosch, there had recently been a "bad decision out of our Court of Appeals" regarding the DMA. (Hutchins Depo. Ex. 3). McCamic went on to inform Trosch regarding the terms of the 1989 DMA and the 2006 DMA, stating that the 2006 DMA was "the act which we followed." (Hutchins Depo. Ex. 3). He then stated that pursuant to the new case law, Hutchins' interest automatically reverted to the surface owner in 1989. (Hutchins Depo. Ex. 3).

**{¶29}** And to her motion for summary judgment, Hutchins attached the affidavit of Attorney Daniel Bey. (Plaintiff S.J. Motion, Ex. C). According to his affidavit, Bey is a practicing Ohio attorney and resident title insurance agent with extensive experience searching real estate titles and abstracts of title including oil and gas title examinations. (Bey Aff. ¶ 2-3, 5, 7). Bey provided his professional opinion regarding the malpractice claim. Bey opined that McCamic had an attorney-client relationship with Hutchins when representing her interests related to Ohio law and her mineral interest. As to the standard of care, Bey opined that an attorney is required to provide competent legal services in light of the current status of the law necessary to protect the mineral interest. Specific to Hutchins' interest, Bey opined that McCamic had two potential avenues for preserving Hutchins' interest: (1) to file an ancillary estate administration; or (2) to file a preservation

affidavit that complied with the Marketable Title Act and the DMA. Bey stated that, in his opinion, McCamic violated the attorney standard of care by pursuing a course of action that was legally insufficient to preserve Hutchins' mineral interest. He stated that had McCamic properly filed documents in conformity with the statutory process for preserving a mineral interest, then Hutchins' interest would have been preserved. Bey estimated that Hutchins' resulting damages totaled $175,000 in up front bonus consideration and approximately $200,000 in residual royalties.

**{¶30}** In his deposition, McCamic spoke to why he did not file an ancillary estate or preservation affidavit. McCamic stated that he did not file a notice to preserve because Hutchins only hired him to negotiate a lease, not to clear her title. (McCamic Depo. 20). He also stated that had he filed a preservation affidavit in 2013, he could have made Hutchins susceptible to a slander of title action. (McCamic Depo. 30). McCamic further stated he did not open an ancillary estate administration because Hutchins did not have an interest in any property in Monroe County. (McCamic Depo. 31). He claimed that had he negotiated an oil and gas lease on Hutchins' behalf, if the oil and gas company requested an ancillary estate administration then he would have proceeded with it. (McCamic Depo. 33).

**{¶31}** Based on the above, conflicting evidence exists as to (1) whether Hutchins hired McCamic to preserve her oil and gas interest or to simply negotiate a lease and, if McCamic was hired to preserve Hutchins' interest, as to (2) whether McCamic breached the standard of care owed to Hutchins given the changing state of the law at the time. Therefore, genuine issues of material fact exist that should have precluded summary judgment.

**{¶32}** Accordingly, Hutchins' sole assignment of error has merit and is sustained.

**{¶33}** For the reasons stated above, the trial court's judgment is hereby reversed and this matter is remanded to the trial court for further proceedings pursuant to law and consistent with this opinion.

Robb, J., concurs.

D'Apolito, P.J., concurs.

Case No. 22 MO 0023

———————————————

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is reversed.  We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**