Bennie D. Herring, Billy Clyde Herring, and Dee Dee Bell appeal from a summary judgment entered in favor of defendants James W. Parkman III and John E. Gormley in their actions alleging legal malpractice and fraud. The issues are whether Billy Herring and Bell presented substantial evidence of malpractice on the part of Parkman, whether the Herrings and Bell presented substantial evidence of fraudulent conduct on the part of *Page 998 
Parkman or Gormley, and whether the Herrings and Bell presented a sufficient response under Rule 56(f), A.R.Civ.P., to the motions for summary judgment, showing what evidence was essential and not yet available.
Billy Herring and Bell filed an action in the Circuit Court of Pike County, alleging that both Parkman and Gormley were liable for fraud, and that Parkman, an attorney, was also liable for malpractice. Bennie Herring then filed a similar action in the Circuit Court of Pike County, asserting a fraud claim against Parkman and Gormley. In the Pike County case, Parkman and Gormley moved both to dismiss and to transfer the case to Houston County. Bennie Herring, proceeding pro se, requested that Gormley and Parkman appear for the taking of their depositions. Apparently, Parkman and Gormley had a conflict with the date; they sought a protective order against the taking of the depositions until after the court had ruled on the transfer motion. The Circuit Court of Pike County apparently entered a protective order staying discovery, and it granted the transfer to Houston County. After his action was transferred, Bennie Herring made a motion to vacate the stay order and to set the case for trial. Parkman and Gormley then moved for a summary judgment both in Billy Herring's action and in Bennie Herring and Bell's action. They attached to their motions an affidavit from Gormley, an affidavit from Parkman, and affidavits from two other attorneys, Samuel L. Adams and John Earl Smith. The plaintiffs filed responses and objections to the summary judgment motions. Billy Herring and Bell attached their affidavits, as well as the affidavits of Ronald Mills, Bennie Herring, and an attorney named John B. Crawley. Bennie Herring attached to his response all of the affidavits submitted by Billy Herring and Bell. He also filed a second motion to lift the stay order, and he moved to strike Parkman and Gormley's affidavits. The circuit court entered a summary judgment for Parkman and Gormley in both actions.
Parkman is an attorney practicing in Dothan, Alabama. Gormley is a private investigator who has an office in Parkman's law offices and does investigative work for Parkman.
Gormley's affidavit gives the following recitation of the facts:
Gormley was approached at his home by a man who offered to sell him a "descrambler" for his satellite dish for television reception. The man stated that the descrambler would allow one with a satellite dish to pick up private pay channels even though their signals were "scrambled." Gormley knew that such a device was illegal. When Gormley asked the man his name, the man grew nervous, stated that his name was Eddie Smith, and left hurriedly.
The next day Gormley encountered an agent for the Federal Bureau of Investigation ("FBI") who came to Parkman's office in regard to some legal work Parkman was doing for the agent's wife. Gormley told the agent about his encounter with Smith. The agent asked Gormley if he would tell his story to another FBI agent who was working in the Dothan area investigating satellite descrambler cases. Gormley then spoke with that agent, who asked him to tell the agent if Smith contacted him again. Shortly thereafter, Smith telephoned Gormley at his office and offered to sell Gormley a descrambler for $800.00. Gormley invited him to come to his office to talk further. Gormley then telephoned the FBI agent and told him that Smith was coming to his office. Agents for the FBI then, Gormley said in his affidavit, "put a wire in [his] office and staked out [his] office." They also set up a video recorder to videotape the meeting. At the time Smith was to appear, a Dothan police officer came to Gormley's office instead. The officer told Gormley that Smith worked for him and that he — the officer — would sell Gormley a descrambler for $800.00. Gormley later purchased a descrambler from the officer. The officer was arrested, and he later pleaded guilty to a misdemeanor.
Gormley said in his affidavit, "several months later, after the . . . case [with the policeman] was completely over," attorney George Beck, attorney John Crawley, the Herrings, Bell, and Ronald Mills came to Parkman's office. They asked Parkman to represent Billy Herring and Bell in a criminal *Page 999 
case in the United States District Court in which the Herrings, Bell, and Mills were charged with violating federal law pertaining to satellite descramblers; George Beck was to represent Bennie Herring and Mills. Gormley said Parkman asked him to attend the meeting, and that he did so. After all of the facts were discussed, Gormley said, he and Parkman excused themselves and discussed "whether or not there would be a conflict of interest since I [Gormley] had cooperated with the FBI in the [policeman's] case and since he [Parkman] wanted me to do any investigation that was needed should he represent [Billy Herring and Bell.]" Gormley said he and Parkman "went back into the meeting and carefully questioned everyone about every possible person that could be involved in the case against [the Herrings, Bell, and Mills] and there was no one involved, in any way, in their case who had been involved in the [policeman's] case." Gormely stated that the policeman's case had been "made" by the FBI, while the case against the Herrings, Bell, and Mills was "made" by the United States Customs Bureau, and that the prosecutors from the United States attorney's office in the two cases were different.
Gormley's affidavit continued:
 "There was no connection between the [policeman's] case and this case whatsoever, and I did not divulge any information to the government that I learned while investigating for Mr. Parkman when he represented Billy Clyde Herring and Dee Dee Bell. My connection with the FBI and the U.S. attorney's office was not an on-going relationship. It was a one-time involvement which ended when the case against [the policeman] was concluded. I did not willingly get involved in the [policeman's case] but became a witness by [a] turn of events which I did not initiate. I was nothing more than a witness on the [policeman's] case, and I did not represent the U.S. Government in a capacity that created an ongoing professional duty of loyalty between us."
Gormley further stated in his affidavit that the Herrings, Bell, and Mills were convicted; that after their convictions, the policeman in whose case Gormley had been involved told them about Gormley's involvement in his case; that in their criminal case the Herrings, Bell, and Mills raised as a ground for their motion for a new trial that Parkman, the attorney for Billy Herring and Bell, had had a conflict of interest because of Gormley's involvement in the policeman's case; that the United States district judge did not recognize this ground as having merit; and that their convictions were reversed on appeal because they "were indicted under the wrong code section."
Parkman made many of the same statements in his affidavit, and also said that Gormley had been involved in the policeman's case "several months prior to [Parkman's] being hired to defend Billy Clyde Herring and Dee Dee Bell." Parkman stated the following concerning his representation of Billy Herring and Bell:
 "I never communicated any confidential information to the government which I had learned from my clients, nor did I breach any confidence or trust which they had placed in me in any way. I defended Billy Clyde Herring, and Dee Dee Bell to the best of my ability. I carefully researched the law involving illegal satellite descramblers, prepared the case for trial and tried it using trial skills and knowledge of the criminal law that I have acumulated over 13 years of trying criminal cases. My law practice during most of the time that I have practiced law has been predominately dedicated to criminal defense work, and I am confident that I have defended as many criminal cases as any attorney in Alabama who has practiced the same number of years that I have practiced."
Parkman's affidavit goes on to state:
 "Bennie D. Herring complains that I did not allow him or the other defendants to testify during the trial. Billy Clyde Herring makes the same complaint. I did not represent Bennie D. Herring. He was represented by George Beck of Montgomery. I did not feel that it was in anyone's best interest that any of the Defendants or expert witness[es] should testify, but the ultimate decision on whether or not Bennie D. Herring or Ronald Mills or any expert *Page 1000 
witness should testify was up to their own attorney, George Beck. I did not then, and still do not, believe that it was in the best interest of any of the Defendants or experts to take the witness stand, testify and open themselves up to cross-examination and impeachment by the government. The Herrings and Bell also complain that I didn't use 'charts, graphs, visual aids and certain devices' in their defense. The defense of all four Defendants was jointly coordinated by myself and George Beck. We did not know of any charts, graphs, visual aids or other devices which we felt would help in the defense of this case other that [sic] the ones we prepared and used at trial."
Bennie Herring stated in his affidavit that, several weeks before trial, Parkman, who had had several conferences with all of the criminal defendants and with Bennie Herring's attorney, Beck, "began trying to persuade us defendants from testifying." Bennie Herring stated that at trial the defendants had another "heated discussion" with Parkman concerning whether they should testify, and that Parkman advised against it. He and Gormley, according to Bennie Herring, told the defendants, "[Y]ou have it made."
Bennie Herring's affidavit states that if he had testified, he would have testified that: (1) Billy Herring was his employee at his business, which was known as Tri-State Satellite; Billy Herring worked for him on a part-time basis under his direct supervision; and Billy Herring did not know how to "modify a circuit board and never sold one." (2) Bell worked for Tri-State Satellite as a clerical employee only; she never modified or sold a modified descrambler; and her only responsibilities were bookkeeping and "new wholesale goods." Only Bennie Herring and Mills were responsible for modification and sales of modified descramblers. Bennie Herring's affidavit also states that he and Mills offered to testify to the above, but were told by Parkman and Gormley that "it would only muddy the water."
Bennie Herring's affidavit further states: "After the trial, I discovered that John Gormley had an ongoing secret relationship with the government and was an informant in a Videocipher II Descrambler modification case [which] occurred during the month I was indicted on the same type matter," and "If I had known of the ongoing secret relationship between Jim Parkman's investigator, John Gormley, and the government, I would have never hired Jim Parkman, allowed Jim Parkman or John Gormley to discuss my defense, allowed either to give me any recommendations or give any weight to such recommendations, particularly his strong recommendation that I not testify."
Bennie Herring's motion to strike the affidavits of Parkman and Gormley asserted that Gormley and Parkman had incorrectly stated that Gormley's involvement in the policeman's case had ended "several months" before the Herrings and Bell approached Parkman requesting representation. Bennie Herring attached a copy of a transcript dated October 19, 1989, of the taped conversation between Gormley and the policeman, and a check from the Herrings to Parkman's firm for $5,000.00, inscribed "retainer," dated October 26, 1989. Bennie Herring argued to the circuit court that these attachments make it clear that Gormley was still involved with the investigation of the policeman when the Herrings and Bell came to Parkman's office.
The first issue is whether Billy Herring and Bell presented substantial evidence of fraud on the part of either Gormley or Parkman.
A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. Once the moving party makes such a prima facie showing, the burden shifts to the nonmovant to show by substantial evidence that there exists an issue of fact. Ala. Code 1975, § 12-21-12;Specialty Container Mfg., Inc. v. Rusken Packaging, Inc.,572 So.2d 403 (Ala. 1990). Section 12-21-12, Ala. Code 1975, requires proof by "substantial evidence" in order to "submit an issue of fact to the trier of facts."
Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can *Page 1001 
reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
The Herrings and Bell base their fraud claim on Ala. Code 1975, § 6-5-102 (1975), which reads as follows:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
"To prove suppression of a material fact, a plaintiff must establish (1) that the defendant had a duty to disclose that fact, (2) that the defendant concealed or failed to disclose that fact, (3) that the concealment or failure to disclose induced the plaintiff to act, and (4) that the action caused injury to the plaintiff." Baker v. Bennett, 603 So.2d 928, 935
(Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1260,122 L.E.2d 658 (1993).
"Under [§ 6-5-102,] silence is not fraud unless an obligation to communicate a material fact exists. Such an obligation may arise where confidential relations or 'particular circumstances' exist." Trio Broadcasters, Inc. v. Ward,495 So.2d 621, 623 (Ala. 1986).
Parkman and Gormley's affidavits made a prima facie showing that there was no genuine issue of material fact as to the fraud claims. Those affidavits indicated that Gormley had participated in an unrelated investigation that coincidentally involved a crime similar to the one with which the Herrings and Bell were charged, and that Gormley had simply done his duty as a citizen in reporting the criminal activity to the authorities and in cooperating in their investigation. After they ascertained that the two cases were unrelated, neither Gormley nor Parkman had a duty to disclose Gormley's involvement in that investigation to the Herrings and Bell. These facts did not create for Parkman or Gormley a duty to disclose to the Herrings and Bell Gormley's involvement in the other case. Thus, Parkman and Gormley made a prima facie showing in support of their motion for summary judgment on the fraud claims, i.e., a prima facie showing that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.
Therefore, the burden shifted to the Herrings and Bell to present substantial evidence creating a genuine issue of material fact, and they failed to do so. For example, they made no showing that the policeman's criminal case was in any way related to theirs other than by virtue of the immaterial fact that it involved charges of violating the same, or related, provisions of federal law. Although Bennie Herring, in his motion to strike Parkman and Gormley's affidavits, disputed the amount of time that had elapsed between Gormley's involvement with the policeman's case and his involvement with the plaintiffs' cases, this inconsistency is immaterial. Because the other case was unrelated, it did not create a duty to disclose, whether Gormley's involvement had occurred several months earlier or one week earlier. The plaintiffs failed to present substantial evidence to support their fraud claim against either Gormley or Parkman.
We now turn to the question of whether Billy Herring and Bell presented substantial evidence to support their malpractice claim against Parkman. The brief submitted by the Herrings and Bell does not clearly state the basis of Billy Herring and Bell's malpractice claim, but we assume the following statement from their brief is a summation of their claim: "Billy Clyde Herring and Dee Dee Bell contend that they were owed a duty by their attorney to use any legal means to an acquittal at trial. This they claim throughout affidavits was not done."
We note that "[a] plaintiff in a legal malpractice action must prove the same basic elements as in a negligence action: duty, breach, proximate cause, and damages." Pickard v. Turner,592 So.2d 1016, 1019 (Ala. 1992); see also Lightfoot v.McDonald, 587 So.2d 936, 937 (Ala. 1991). "In addition to the traditional elements of a negligence action, the legal malpractice plaintiff must prove that the transaction would have had a different result if the alleged negligence had not occurred." Pickard, 592 So.2d at 1019. In *Page 1002 
an action alleging malpractice in relation to representation in a criminal case resulting in a conviction, the rule is the same — the plaintiff must prove that "in the absence of the alleged negligence the outcome of the case would have been different."Hall v. Thomas, 456 So.2d 67, 68 (Ala. 1984). This means that Billy Herring and Bell had to present substantial evidence (1) that Parkman was negligent and (2) that in the absence of this alleged negligence, they would not have been convicted.
Billy Herring and Bell did not present evidence on either aspect. Parkman's recommendation that they not testify and that other witnesses, including Bennie Herring and Mills, not testify, was based on a decision within the province of Parkman's exercise of judgment as to trial strategy. Although a lawyer owes his client a duty to exercise "such reasonable care and skill and diligence as other similarly situated legal service providers in the same general line of practice in the same general area ordinarily have and exercise in a like case," Ala. Code 1975, § 6-5-580(1), "[a]n attorney 'is not answerable for an error in judgment upon points of . . . nice or doubtful construction.' " Herston v. Whitesell, 348 So.2d 1054, 1057
(Ala. 1977) (quoting Goodman v. Walker, 30 Ala. 482, 496
(1857)). "The duty of using reasonable care and skill applies to the manner in which the attorney pursues the case and the law which he applies to the case." Herston, 348 So.2d at 1057. Indeed, "the decision not to call a particular witness is usually a tactical decision" for the attorney. Luke v. State,484 So.2d 531, 533 (Ala.Crim.App. 1985). Parkman stated that he advised Billy Herring and Bell not to testify because he did not want to subject either of them to cross-examination or impeachment by the prosecution. This choice of trial strategy, although it did not prevent a conviction, will not support a malpractice claim. Billy Herring and Bell presented no evidence that Parkman failed to use reasonable care and skill in conducting their defenses.
Thus, the plaintiffs did not present substantial evidence of either fraud or malpractice.
The Herrings and Bell argue that they were unable to present substantial evidence in support of their claims because, they say, they were not given the opportunity to complete discovery. This argument presents the question of whether they sufficiently complied with the provisions of Rule 56(f), Ala.R.Civ.P., which provides:
 "If a party opposing the [summary judgment] motion shows by affidavit that he or she cannot, for reasons stated in the affidavit, present facts essential to justify a statement in opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
(Emphasis added.)
Neither Billy Herring, nor Bennie Herring and Bell, stated in their responses to the summary judgment motion that they could not "present facts essential to justify a statement in opposition" to the motion. Indeed, they argued the merits of the motion only, arguing that there were disputed issues of material fact.
In both actions the plaintiffs filed "objection[s] to submission of summary judgment," but these documents stated only the following (the quotation is from Bennie Herring's motion):
 "Comes now the plaintiff in the above referenced case and objects to the submission of the Motion for Summary Judgment to this Court. The instant case involves malpractice and a failure to disclose a conflict of interest. Adequate discovery has not been had in this case and a ruling on a Motion for Summary Judgment is therefore premature."
These documents did not comply with Rule 56(f). Rule 56(f) requires from the party opposing the summary judgment motion an affidavit stating the reasons why he cannot present essential facts. Malloy v. Sullivan, 455 So.2d 12, 13 (Ala. 1984). Neither Billy Herring, Bennie Herring, nor Bell attached to the objection to the summary judgment motion an affidavit stating reasons why they could not present essential facts. *Page 1003 
The affidavits that they did submit opposed the summary judgment motion on the merits.
Although Bennie Herring argues that he should have been allowed to depose Parkman and Gormley before the circuit court ruled on the summary judgment motion, we note that "[t]he mere pendency of discovery does not bar summary judgment." Hope v.Brannan, 557 So.2d 1208, 1212 (Ala. 1989); see also Reeves v.Porter, 521 So.2d 963, 965 (Ala. 1988). "A party seeking the shelter of Rule 56(f) must offer an affidavit explaining to the court why he is unable to make the substantive response required by Rule 56(e). If no crucial evidence would be supplied by the discovery, it is not error for the trial court to enter summary judgment with discovery pending." Hope, 557 So.2d at 1213. The plaintiffs did not explain what crucial evidence might be supplied by deposing either Gormley or Parkman. The plaintiffs have not shown that the circuit court erred in entering the summary judgment without permitting the plaintiffs to conduct further discovery.
Because the plaintiffs did not comply with Rule 56(f), and because there was no genuine issue of material fact concerning either the malpractice claim or the fraud claim, the summary judgments for Parkman and Gormley are due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and HOUSTON, INGRAM and COOK, JJ., concur.