Rel: April 21, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

———————————————

### SC-2022-0813

———————————————

**Mary Beasley Schaeffer and Ellis Beasley Long, as personal representative of the Estate of Emma Glass Beasley, deceased**

**v.**

**Jan Garrison Thompson**

**Appeal from Dallas Circuit Court**
**(CV-2013-900142)**

MITCHELL, Justice.

This case arises from a long-running family dispute over property in Perry County, which culminated in a trial and an appeal to this Court. See Schaeffer v. Poellnitz, 154 So. 3d 979 (2014). Unhappy with the result in the underlying litigation, two of the family members -- Mary Beasley Schaeffer ("Mary") and Ellis Beasley Long ("Ellis"), as the personal representative of the estate of Emma Glass Beasley, deceased -- sued their attorney, Jan Garrison Thompson, claiming that he committed malpractice when he represented them. Thompson moved for summary judgment and presented evidence that he did not commit malpractice. In response, Mary and Ellis submitted expert testimony stating that Thompson violated the standard of care owed by attorneys. The trial court ruled for Thompson and entered summary judgment in his favor. Mary and Ellis appealed. We affirm.

Facts and Procedural History

Emma Glass Beasley ("Emma") and Lyle Glass Young ("Lyle") jointly inherited Westwood, a parcel of land in Perry County. Emma had two children -- Mary and Ellis -- and Lyle had three -- Eddie, Billy, and Adele. In 1996, Emma and Lyle placed Westwood in a trust called the

Westwood Management Trust ("the Trust"). Emma was named trustee. Two years later, Emma and her children obtained a $28,000 judgment against Lyle's children ("the Marengo County judgment") in an unrelated matter.

In 2005, Eddie, who had lived on Westwood, died. William M. Poellnitz was named administrator of his estate. A dispute arose between, on one side, Poellnitz, Billy, and Adele ("the Young branch") and, on the other, Emma and Mary. The Young branch sued Emma and Mary in the Perry Circuit Court asserting several counts, including mismanagement of the Trust and conversion. Emma and Mary counterclaimed, seeking the payment of debts the Young branch allegedly owed them. Shortly before the case went to trial, Emma died, and Ellis, as personal representative of her estate, was substituted as a party.

The case was tried to a jury in 2011. At the conclusion of the trial, the jury awarded the Young branch (1) $63,915 for mismanagement of the Trust; (2) $3,645 for conversion of Eddie's property; (3) one-half of the furnishings and heirlooms in the house located on Westwood ("the Westwood house"), valued at $172,000; and (4) $200,000 in punitive

3

damages to each of Eddie's estate, Billy, and Adele. On the counterclaims, the jury awarded Emma and Mary $8,043 against Billy and $8,043 against Veronica Young, Billy's wife, who had also been named as a counterclaim defendant. After the trial court entered judgment, Mary and Ellis appealed. This Court affirmed the judgment in part and reversed it in part. Poellnitz, 154 So. 3d at 991.

In 2013, while the appeal of the underlying case was still pending, Mary and Ellis sued their attorney, Thompson, in the Dallas Circuit Court alleging malpractice. They alleged that Thompson had made the following three errors at trial amounting to malpractice: (1) in support of the counterclaims for debts owed by the Young branch, Thompson submitted into evidence the Marengo County judgment, which they say rendered that judgment unenforceable; (2) Thompson failed to ask for a jury instruction defining the term "hereditaments," which they say was necessary for the jury to determine which items belonged to the Trust; and (3) Thompson failed to obtain an independent appraisal of the value of the furnishings and heirlooms in the Westwood house, without which they argue the jury could not determine the items' value.

4

Thompson filed a motion for summary judgment, which the trial court granted. Mary and Ellis appealed, and the Court of Civil Appeals reversed the judgment because, it said, Thompson had not supported his motion with substantial evidence. See Schaeffer v. Thompson, 303 So. 3d 159, 162 (Ala. Civ. App. 2020). On remand, Thompson again moved the trial court for summary judgment, arguing that he had not violated the standard of care owed by attorneys because, he said, each challenged decision was a matter of trial strategy. He supported this second motion with his own testimony as well as expert testimony from his opposing counsel in the underlying case. Mary and Ellis opposed his motion with expert testimony from another lawyer stating that Thompson had violated the standard of care. The trial court granted Thompson's motion. Mary and Ellis appealed.

## Standard of Review

On appeal from a summary judgment, this Court applies de novo "'the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact.'" American Liberty Ins. Co. v. AmSouth Bank, 825 So. 2d 786, 790 (Ala. 2002) (citation omitted). The initial burden is on the

5

movant to establish that no genuine issue of material fact exists. Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So. 2d 369, 372 (Ala. 2000). The burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Id. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989); see also § 12-21-12(d), Ala. Code 1975.

## Analysis

In this appeal, Mary and Ellis say that they presented evidence that created a genuine issue of material fact as to whether Thompson breached the standard of care under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala. Code 1975. After reviewing the relevant parts of the record, it is clear they did not.

"[A] lawyer owes his client a duty to exercise 'such reasonable care and skill and diligence as other similarly situated legal service providers in the same general line of practice in the same general area ordinarily have and exercise in a like case.'" Herring v. Parkman, 631 So. 2d 996,

1002 (Ala. 1994) (quoting § 6-5-580(1), Ala. Code 1975); cf. Pinkston v. Arrington & Graham, 98 Ala. 489, 494, 13 So. 561, 562 (1893) (observing that it is the "duty and responsibility of an attorney to his client" to provide legal services "'with due care, diligence and skill'" (citation omitted)). To prevail on a claim of legal malpractice, the plaintiff "'must prove the same basic elements as in a negligence action: duty, breach, proximate cause, and damages.'" Herring, 631 So. 2d at 1001 (quoting Pickard v. Turner, 592 So. 2d 1016, 1019 (Ala. 1992)). But the plaintiff must also prove that (1) "in the absence of the alleged malpractice, the plaintiff would have been entitled to a more favorable result in the legal matter" and (2) "the attorney's negligence in fact caused the outcome of the legal matter to be less favorable to the plaintiff." Bonner v. Lyons, Pipes & Cook, P.C., 26 So. 3d 1115, 1120 (Ala. 2009).

A legal-malpractice defendant who moves for summary judgment may support that motion "with evidence that makes a prima facie showing that the defendant did not act negligently." McDowell v. Burford, 646 So. 2d 1327, 1328 (Ala. 1994). The burden then shifts to the plaintiff, who "must rebut the defendant's prima facie showing with

expert testimony indicating that the defendant lawyer did act negligently" to survive summary judgment. Id.

Herring is instructive in setting out how the burden-shifting framework operates in a legal-malpractice case. In Herring, the plaintiffs alleged that the defendant had breached the standard of care by advising them not to testify at trial. 631 So. 2d at 1002. The defendant moved for summary judgment and supported his motion with his own sworn testimony that "he advised [the plaintiffs] not to testify because he did not want to subject either of them to cross-examination or impeachment by the prosecution." Id. The Houston Circuit Court granted the motion. Id. On appeal, this Court, drawing on doctrine developed in the ineffective-assistance-of-counsel context, acknowledged that "'the decision not to call a particular witness is usually a tactical decision' for the attorney." Id. (quoting Luke v. State, 484 So. 2d 531, 533 (Ala. Crim. App. 1985)). Because the defendant had submitted evidence that his "recommendation that [the plaintiffs] not testify … was based on a decision within the province of [the defendant's] exercise of judgment as to trial strategy," this Court held that the burden shifted to the plaintiffs to rebut his evidence. Id. Because the plaintiffs did not carry

their burden by submitting substantial evidence or stating the reasons why they could not do so under Rule 56(f), Ala. R. Civ. P., this Court affirmed the summary judgment for the defendant. Id. at 1002-03.

Here, there is no dispute that Thompson carried his initial burden. Rather, Mary and Ellis argue that, after the burden shifted to them, they met it by presenting substantial evidence that three of Thompson's decisions at trial breached the standard of care: (1) "introducing the Marengo County judgment at trial," (2) "not submitting the proper jury charges related to the meaning of the word hereditaments," and (3) "not presenting evidence as to the actual value of the furnishings and heirlooms." Mary and Ellis's brief at 14. Mary and Ellis say that they made the required showing regarding each of these decisions through expert testimony. But they did not make that showing. To demonstrate the inadequacy of their evidence, we examine each of their arguments below -- and we do so by beginning with the evidence that Thompson brought forward, to which they were required to respond.

A. The Marengo County Judgment

Mary and Ellis first argue that they created a genuine issue of material fact as to whether Thompson's decision to introduce the

9

Marengo County judgment into evidence at trial constituted malpractice. In his motion for summary judgment, Thompson relied on his own testimony to argue that he "made this decision in the exercise of his professional judgment as to trial strategy, which met the appropriate standard of care and was consistent with controlling Alabama law." He argued that he did so to show that the Young branch "had no reason [for] suing [Mary] and [Ellis] since the [Young branch was] indebted to [Mary] and [Ellis] and the Trust in various amounts."

Thompson also supported his motion with expert testimony from Woodford W. Dinning, Jr., his opposing counsel in the underlying case. Dinning stated that Thompson's decision to introduce the Marengo County judgment into evidence "was done in the exercise of [Thompson's] professional judgment relating to trial strategy and which, in [Dinning's] opinion, met the appropriate standard of care and was consistent with controlling Alabama law." Dinning continued: "The fact that [Dinning's] clients had failed to obey a court order and 1997 Court judgment placed [Dinning's] client's credibility seriously at issue, and the action taken by Mr. Thompson was an astute decision, in [Dinning's] opinion."

Mary and Ellis sought to rebut Thompson's evidence with the affidavit of another attorney, James Starnes, who testified as an expert on their behalf. Based on his review of the record, Starnes testified that "the Marengo County Judgment should not have been introduced at trial[,] and it was below the standard of care for Thompson having done so," and that, "[b]ut for [Thompson's] introduction of the judgment at trial, the judgment would have remained valid and enforceable following trial in the underlying litigation." Mary and Ellis argue that "[t]he testimony of Attorney Starnes was substantial evidence of Thompson's breach of the standard of care and was sufficient to defeat Thompson's summary judgment motion" as to the Marengo County judgment. Mary and Ellis's brief at 18.

But Starnes's affidavit fell short as rebuttal evidence. The assertions in his affidavit were conclusory -- they did not dispute that Thompson's decision was one of trial strategy or provide evidence that, despite its strategic nature, the decision was made in a way that impugned Thompson's care, skill, or diligence. As this Court has said, bare conclusory facts and statements in an affidavit do not constitute substantial evidence in summary-judgment proceedings. B.M. v. Crosby,

581 So. 2d 842, 843 (Ala. 1991) (citing Nowell v. Mobile Cnty. Health Dep't, 501 So. 2d 468, 470 (Ala. Civ. App. 1986)). Mary and Ellis's reliance on Starnes's affidavit is thus misguided, and they have failed to demonstrate grounds for reversing the trial court's judgment as to this issue.

B. Jury Instructions

Mary and Ellis next contend that Thompson breached his duty to them by not submitting jury charges defining the word "hereditaments." Mary and Ellis's brief at 14, 17-18. Thompson again relied on his own affidavit to argue for summary judgment, stating that he "made this decision in the exercise of his professional judgment as to trial strategy, which met the appropriate standard of care and was consistent with controlling Alabama law." He said that "he made this tactical trial decision since there was sufficient testimony and evidence presented at trial to be able to exercise common sense and judgment to determine the meaning of hereditaments." Specifically, he noted, "[m]ultiple witnesses testified as to the personal property that was a part of the Westwood home and further explained the historical significance of that property." He also said that he "recall[ed] asking the court for a jury charge on

12

hereditaments, but the charge was refused." Thompson again reinforced his motion with Dinning's testimony indicating that Thompson's decision about a jury instruction was strategic and that it met the standard of care.

In arguing that they provided evidence sufficient to create a genuine issue of material fact, Mary and Ellis point to Starnes's affidavit, which stated: "I find no facts that indicate Thompson explained or instructed the Jury as to the meaning of 'hereditaments.'" The affidavit continued: "In my opinion and experience the term 'Hereditaments' is seldom used today," and "the underlying jury, without any instructions or information to the contrary, had insufficient knowledge of the term to make a reasonable finding of fact regarding the Westwood Management Hereditaments property." Id. Accordingly, Starnes said: "Thompson's representation fell below the applicable standard of care in not instructing the jury as to the term 'hereditaments.'" Starnes concluded: "But for Thompson's breach of the standard of care by not informing the Jury of this issue the Jury had insufficient instructions in which to make an appropriate finding of fact regarding the issue if the items belong with the Westwood Management Trust or otherwise."

13

Starnes's affidavit was inadequate on this issue as well. Thompson argued that the decision not to ask for a jury instruction defining the term "hereditaments" was within the province of his professional judgment as to trial strategy. He provided evidence that he made this decision based on his subjective belief that the jury adequately understood the term. Even if Starnes was correct that the jury did not in fact have sufficient knowledge of the word "hereditaments" and that Thompson failed to ask the court to define the term, Starnes's testimony did nothing to dispute the strategic nature of Thompson's decision or show that Thompson's understanding of the jury's knowledge was unreasonable in the circumstances. Starnes's testimony was, once again, conclusory and did not create an issue of fact. Accordingly, Mary and Ellis have not shown that the trial court erred in entering summary judgment in favor of Thompson as to this decision.

### C. Value of Furnishings and Heirlooms

Mary and Ellis's final contention is that Thompson violated the standard of care by "not presenting evidence as to the actual value of the [Westwood] furnishings and heirlooms." Mary and Ellis's brief at 14. In his motion, again relying on his own affidavit, Thompson argued that he

"made this decision as to trial strategy, which met the appropriate standard of care and was consistent with controlling Alabama law." He stated that he "made this tactical trial decision since Mary Schaeffer had offered testimony that disputed the $170,000 appraisal presented by the Young branch at trial." Further, he said that "Ms. Schaeffer testified that the value of the furnishings was much less than the appraisal and that they were only insured for $60,000." Thompson again supported his argument with testimony from Dinning stating that Thompson's strategic decision met the standard of care.

Unlike the two preceding issues, Mary and Ellis did not present expert testimony purporting to rebut Thompson's evidence on this issue. Rather, they argue that they met their burden here because, according to them, "this issue falls within the common knowledge exception to the general rule requiring expert testimony in a legal malpractice action." Mary and Ellis's brief at 19. Indeed, while expert testimony is ordinarily required to defeat summary judgment on a legal-malpractice claim, this Court has recognized an exception "where a legal-service provider's want of skill or lack of care is so apparent as to be understood by a layperson

15

and requires only common knowledge and experience to understand it." Valentine v. Watters, 896 So. 2d 385, 394 (Ala. 2004).

Mary and Ellis's argument is unavailing because they have not made any substantive argument that the exception applies. They say that "resolution of this issue does not require scientific, technical, or other specialized knowledge in order for the trier of fact to determine whether the applicable standard of care was breached." Mary and Ellis's brief at 19. And they assert that "[a] layperson utilizing common knowledge and experience can certainly make this determination." Id. But these statements are conclusory and provide no substantial basis for dispensing with the expert-testimony requirement. Because Mary and Ellis did not rebut Thompson's showing with expert testimony or show that the common-knowledge exception applies, they have failed to establish that the trial court erred in entering summary judgment for Thompson as to the appraisal decision.

## Conclusion

Mary and Ellis have not demonstrated that the trial court erred in entering summary judgment in favor of Thompson. Therefore, we affirm.

AFFIRMED.

Shaw, Wise, Bryan, and Cook, JJ., concur.

Parker, C.J., and Sellers, Mendheim, and Stewart, JJ., concur in the result, without opinion.